JACOB SKILLMAN, one of the executors of Thomas Skillman, deceased, appellant, *and* DAVID B. SKILLMAN and WILLIAM H. SKILLMAN, respondents.

When executors, being authorized by the will of their testator to sell his real estate, advertised for sale his farm, which was sold at public auction to one S., who purchased at the request of one of the executors, who was the real purchaser, for the sum of $4500. The purchaser did not sign the contract of sale, nor were the other conditions complied with at the time, on account of objections to the sale made by the other executors,

but before the day named by the conditions of sale the real purchaser took possession of the farm, contracted for the sale of a part of it, and put the purchaser in possession, and on the day and at the place appointed for giving the deed he appeared, in compliance with the conditions, prepared to complete the purchase, but the other executors refused to make the title. After repeated unsuccessful efforts, during nine months, to procure the title, the purchaser gave notice to his co-executors that he would no longer hold himself responsible for the purchase, and requested them to re-sell the property.

About a year afterwards the purchaser was cited before the Orphans Court by his co-executors to render an account of his administration, and was ordered by the court to file an account within twenty days, charging himself with $4500, the purchase money of the farm, as assets in his hands.

On an appeal from the decree of the Orphans Court it was *held*—

1. That there was clearly no valid contract of sale; treating the executor as a stranger to the estate, the fact that the purchaser refused to sign the conditions because one of the executors refused to ratify the sale, is conclusive on that point.

2. That no subsequent act of the purchasing executor bound him. His taking possession of the farm, contracting verbally for the sale of a part of it, and putting the purchaser in possession, were manifestly done in good faith with the expectation of obtaining the title. Having failed in that, he cannot be bound by these acts as part performance or as an acknowledgment of his liability as purchaser.

3. The execution of the deed by the other executors a year after the purchase was made, and leaving it at the office of the attorney of the purchaser after he had given distinct notice that he would not accept the title, was a mere nullity.

4. The purchase of the property by one of the executors was clearly illegal. He would acquire no valid title if the deed was delivered. If he had accepted the title, and agreed to pay the price, he might not be permitted in equity to disavow the act and refuse to pay the purchase money. But no court would require an executor, against his will, to act in violation of his duty or to accept an invalid title.

5. Neither the Orphans Court nor this court has any power to enforce a specific performance of the contract, even if the executor was bound in equity to a specific performance. That question, as well as the question of the liability of the executors for a failure to sell the land and settle the estate, belongs to another tribunal.

The decree of the Orphans Court was in all things reversed, but no costs were allowed to either party, as against the other, nor were costs awarded to either party out of the estate.

*J. Wilson,* proctor for appellant.

2 K*

*B. Vansyckel*, for respondents.

THE ORDINARY. On the sixth of September, 1861, Jacob Skillman, the appellant, was cited by the respondents to appear before the Orphans Court of Hunterdon county, to render an account of his administration of the estate of the testator, Thomas Skillman, deceased, and particularly of the proceeds of the sale of the real estate of said deceased. On the twenty-sixth of November, 1861, it was ordered and decreed, by the said court, that Jacob Skillman, one of the executors of said deceased, should be charged with the sum of forty-five hundred dollars (with interest from the first day of April, 1860,) the amount of the sale of certain real estate of the testator which had become assets in his hands; and it was further ordered that he should, within twenty days, file his account charging himself as decreed. From this decree the executor appealed.

The parties are all executors of their father, Thomas Skillman, and are all interested with other devisees of the testator, some of whom are minors, in the proceeds of the sale of his real estate, which, as executors, they were by the will authorized to sell. On the tenth of January, 1860, the homestead property of the testator was exposed to sale at public vendue. By the conditions of sale, signed by all the executors, the title was to be made, and the papers exchanged on the second of April then next. At the close of the sale, the purchaser was to give his note, with approved security, for one-tenth of the purchase money, payable on the second of April, as part payment. One half of the purchase money was to be paid in cash on the delivery of the title, and the balance secured by a bond and mortgage, payable in one year with interest, or in cash, at the option of the purchaser. The property was struck off to John J. Sutphen, for forty-five hundred dollars, he being the highest bidder. The bid was made by Sutphen for the appellant, and at his request. The conditions of sale were not signed by Sutphen, nor was a note signed in compliance with the conditions, David B.

Skillman, one of the executors, objecting to the sale. In March, 1860, the appellant, who was the real purchaser, contracted for the sale of five acres of the premises, and gave the vendee possession. On the first of April he took possession of the land, and on the second of April, in compliance with the conditions, he appeared at the place designated prepared to complete the purchase, but David B. Skillman, one of the executors, refused to sign the deed. After repeated but unsuccessful efforts to procure the completion of the title, on the thirty-first day of December, 1860, the appellant gave to his co-executors written notice that he would no longer hold himself responsible for the purchase, and requested that the same might be advertised and sold without delay. He subsequently proposed to accept the title and pay the purchase money upon certain stipulations, but the offer was not accepted by his co-executors.

The Orphans Court, in making their decree, must have proceeded upon the ground that the appellant was bound by his contract or by his subsequent acts for the purchase of the property, and that they were authorized to compel, upon his part, a specific performance of the contract.

They were clearly in error upon both points.

1. There was clearly no valid contract of sale. Admitting that, as executor, the appellant might lawfully purchase, or, that having purchased, he could not object to his own illegal act, treating him as a stranger to the estate, there was no valid contract for the purchase of the land. This is clearly proved by the testimony of the crier at the sale, and of Sutphen, the person at whose bid the property was struck off. They both testify that there was no valid sale. The purchaser refused to sign the conditions, because one of the executors refused to ratify the sale. The fact that the conditions of sale were not signed, nor the terms of sale in any respect complied with, are conclusive upon this point.

2. No subsequent act of the executor bound him. Though not bound by the sale, he manifestly was desirous of acquiring title, and expected to do so. He made repeated efforts, by

himself and through his attorney, to this end. With this expectation he took possession of the land, and contracted verbally for the sale of part of it, and put the purchaser in possession. There is no reason to doubt that this was done in good faith with the expectation of obtaining title. He failed in that object, and cannot be bound by these acts as part performance, or as an acknowledgment of his liability as purchaser.

3. The execution of the deed by the executor, a year after the purchase was made, and leaving it at the office of the attorney of the purchaser, after he had given distinct notice that he would not accept the title, was a mere nullity. The attorney had no authority to accept the deed. He was not the agent of the purchaser for that purpose. He so expressly testifies. The deed has never been tendered to or accepted by the appellant, or by Landis, the grantee named in the deed.

4. The purchase of the property by one of the executors was clearly illegal. He would acquire no valid title if the deed were delivered. If he had accepted the title, and agreed to pay the price stipulated, he might not be permitted in equity to disavow the act and refuse to account for the purchase money. But no court would require an executor, against his will, to act in violation of his duty or to accept an invalid title.

5. Neither the Orphans Court nor this court has any power to enforce a specific performance of the contract, even if the executor was bound in equity to a specific performance.

That question, as well as the question of the liability of these executors, or either of them, for a failure to sell the land and settle the estate, belongs to another tribunal.

The decree of the court below must be in all things reversed. No costs should be allowed to either party, as against the other, nor should either party be suffered to have the costs of this controversy between themselves allowed as against the estate.